<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                                    :      Chapter 7
In re:                                              :
                                                    :      Case No. 04-36740 (cgm)
     LOUIS J. GALGANO III,                          :
                                                    :
                   Debtor.          :
                                                    :
-------------------------------------------------------X

**MEMORANDUM DECISION DENYING MOTION OF BARBARA GALGANO**
**FOR SANCTIONS AGAINST DEBTOR PURSUANT TO**
<u>**FED. R. BANKR. P. 9011, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWER**</u>

<u>**A P P E A R A N C E S**</u> **:**

Elliot Wiener, Esq.
Peter Harutunian, Esq.
Phillips Nizer LLP
666 Fifth Avenue
New York, NY 10103
*Attorneys for Movant, Barbara Galgano*

Louis J. Galgano III, Esq.
*Debtor, pro se*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

            Creditor and non-debtor spouse Barbara Galgano ("<u>Ms. Galgano</u>") seeks an award

of $45,724.32, consisting of $42,808.50 in attorneys' fees[1] and $2,915.82 in expenses that she

incurred in connection with a seven-page motion filed by the Debtor (ECF Docket No. 138;

---

[1]       Specifically, Ms. Galgano claims that she incurred (1) $16,382.50 in attorneys' fees (48.7 billable hours) to prepare opposition to the Debtor's Stay-Violation Motion (defined below); (2) $5,464.50 in attorneys' fees (14.7 billable hours for the matrimonial and bankruptcy attorneys) for appearing at the 20-minute June 27, 2006 hearing on the Stay-Violation Motion; (3) $15,711.50 (48.3 billable hours) for filing the Rule 9011 Motion (defined below); and (4) and an estimated $5,250 (14 billable hours for the two attorneys) for appearing at the 15-minute hearing on the Rule 9011 Motion.

hereafter, the "Stay-Violation Motion") in which the Debtor alleged that Ms. Galgano violated the automatic stay pursuant to 11 U.S.C. § 362(a).[2]   At a hearing on June 27, 2006, the Court ruled that the Stay-Violation Motion was meritless and remarked that the Stay Violation Motion was itself sanctionable.  The Court also determined that although the Court had the power under Fed. R. Bankr. P. 9011(c)(1)(B) to consider sanctions against the Debtor, the Court would not do so, and would instead deny the Stay-Violation Motion:

> THE COURT: Whereas, here it appears that a party has asserted that an argument is not warranted by existing law or by a non-frivolous argument for the extension or modification or reversal of existing law or the assessment of new law….**[t]his court in its own initiative admits [sic] a hearing on sanctions pursuant to [9011(c)(1)(B)].**
>
> **I'm not doing that today.  I'm dismissing it.**
>
> MR. WEINER: Your Honor.
>
> THE COURT: Yes, sir.
>
> MR. WEINER: We'll anticipate making an application for sanctions under 9011.  Thank you.
>
> THE COURT: Settle the motion.  I'll order it, and **I'll look at it when I see it.**
>
> MR. WEINER: Thank you very much.

Transcript of June 27, 2006 Hearing (ECF Docket No. 146, Ex. B; hereafter, "June 27, 2006 Tr."), p. 16-17 (emphasis added).  The Court entered an order denying the Stay-Violation Motion on July 10, 2006. (ECF Docket No. 144)  On September 25, 2006, Ms. Galgano moved for sanctions pursuant to Rule 9011. (ECF Docket No. 146; hereafter the "Rule 9011 Motion")  The Debtor opposed the Rule 9011 Motion. (ECF Docket No. 150)  The Rule 9011 Motion did not comply with the so-called "safe-harbor" requirement of Rule 9011(c)(1)(A).  The safe-harbor provision states:

---

[2]      As this bankruptcy case was commenced prior to October 17, 2005, the amendments to the Bankruptcy Code made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8) do not apply.

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, **subject to the conditions stated below**, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. **The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected**….

(emphasis added).  The safe-harbor provision in Rule 9011 is crucial because it gives a moving party an opportunity to avert sanctions by withdrawing a motion that lacks merit or an appropriate legal or factual basis.  It promotes efficiency for courts and for adverse parties that would otherwise incur attorneys' fees in defending the motion.  A litigant should not be rewarded for ignoring the safe-harbor provision, waiting until after the Court has disposed of the motion, and then alleging a violation of Rule 9011(b) in order to seek reimbursement of the attorneys' fees it accumulated while defending the motion.  When a party attempts to use Rule 9011 in this way, the target of the sanctions motion has no opportunity to avoid liability by withdrawing the motion, and the result is completely inefficient for the Court and all parties involved.

At the October 24, 2006 hearing on the Rule 9011 Motion, the Court indicated that the Rule 9011 Motion would be denied for failure to comply with the safe-harbor provision. *See* Transcript, ECF Docket No. 155, Ex. A (hereafter, "October 24, 2006 Tr.").  Counsel for Ms. Galgano requested, and the Court granted, an opportunity to provide a supplemental brief as to whether her failure to comply with the safe-harbor provision should be excused.  The

supplemental brief was filed on November 17, 2006 as a "(1) Supplemental Memorandum in

Support of Barbara Galgano's Motion for Sanctions Pursuant to Federal Rule of Bankruptcy

Procedure 9011 Arising From Debtor's Frivolous Motion for Damages Due to Violation of the

Automatic Stay Pursuant to 11 U.S.C. 362(h) and (2) Barbara Galgano's Motion for Sanctions

Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power" (ECF Docket No. 155; hereafter,

the "Supplemental Motion").  The Supplemental Motion proposed alternative arguments in an

attempt to salvage what Ms. Galgano believes is her right to reimbursement of attorneys' fees

from the Debtor,[3] including the following:

(1)  That Ms. Galgano should be excused from compliance with the safe-harbor provision due to her "reasonable belief that she had received the Court's authorization to file the [Rule 9011 Motion]";

(2)  That the Court, in denying the Stay-Violation Motion and refusing to initiate sanctions under Rule 9011 at the June 27, 2006 hearing "delegated" *to Ms. Galgano the Court's power* to pursue sanctions pursuant to Rule 9011(c)(1)(B);

(3)  That by filing the Stay-Violation Motion the Debtor is responsible, pursuant to 28 U.S.C. § 1927, for multiplying the proceedings "unreasonably and vexatiously" because *the Debtor caused Ms. Galgano* to file multiple briefs and documents, primarily in pursuit of sanctions and legal fees;

(4)  That in determining whether to assess sanctions under 28 U.S.C. § 1927, the Court should also consider the Debtor's conduct in the state court matrimonial proceeding; and

(5)  Urging exercise of the Court's inherent power to assess sanctions, notwithstanding the fact that the Court previously declined to sanction the Debtor under a specific statutory provision.

---

[3]    Even a successful Rule 9011 motion does not guarantee reimbursement of attorneys' fees.  Rule 9011(c)(2) states in relevant part:

Nature of Sanction; Limitations.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*See also Estate of Calloway v. Marvel Ent. Group*, 9 F.3d 237, 241 (2d Cir. 1993) (Fed. Rule Civ. P. 11, substantially identical to Rule 9011, "is not a fee-shifting mechanism and does not create an entitlement in adverse parties to compensatory damages or attorney's fees").

The Debtor filed a reply/opposition to the Supplemental Motion on December 19, 2006. (ECF Docket No. 165)

The Court unequivocally indicated at the June 27, 2006 hearing that, rather than protract these matters further by considering sanctions, the Stay-Violation Motion would be denied. Ms. Galgano and her counsel chose to interpret the Court's words as an invitation to file a procedurally flawed sanctions motion. For the reasons set forth in this decision, the Court will not award sanctions against the Debtor or require him to pay Ms. Galgano's attorneys' fees under any of the theories advanced by Ms. Galgano. It should be emphasized that while the Court does not condone the conduct of the Debtor, it was Ms. Galgano that failed to follow the requirements of Rule 9011, and this directly resulted in drawing the matter out for six months after denial of the Stay-Violation Motion. Under these circumstances, where Ms. Galgano failed to act in an efficient and procedurally appropriate manner, the Court will not reward such conduct under alternative theories of recovery, certainly not by holding that *the Debtor* multiplied and delayed these proceedings. Except for the competing demands for sanctions, the matters pending between these parties in this Court have been resolved since June 2006. The issue now presented to the Court is essentially a motion for sanctions for making a motion for sanctions for seeking to enforce the payment of a state-court sanction. The various sanctions motions are the only matters now delaying the conclusion of the proceedings between these parties in this Court.

## JURISDICTION

This Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a core proceeding because the Stay-Violation Motion, Rule 9011 Motion, and Supplemental Motion are "matters concerning the

administration of the estate" pursuant to 28 U.S.C. § 157(b)(2)(A), and arise from issues

concerning the automatic stay pursuant to 28 U.S.C. § 157(b)(2)(G).  It is well-established that

bankruptcy courts have the inherent power to consider sanctions against parties who appear

before the court. *See, e.g., In re Smith* 2006 WL 3627149, at *1 (8th Cir. Dec. 14 2006).

## BACKGROUND

This case was commenced on July 23, 2004 as a Chapter 11 case.  The Debtor's case was

converted to Chapter 7 on April 28, 2005.[4]  According to his Affidavit submitted pursuant to

Local Bankruptcy Rule 1007-2 (ECF Docket No. 2), the Debtor is a practicing attorney, and his

bankruptcy filing was precipitated by a serious illness, a terminated law partnership, and the

ongoing matrimonial action with Ms. Galgano.  The Debtor and Ms. Galgano were married on

March 30, 1980. *See* Affidavit of Ms. Galgano, ECF Docket No. 12, Exh. B.  The matrimonial

action has been pending in the Supreme Court of the State of New York, County of Westchester

since 1999. *Id*.  Ms. Galgano was awarded custody of their two minor children in 2001, and in

June 2003 the state court ordered the Debtor to pay child support of $1,500 per month pending

the conclusion of the matrimonial action. *Id*.  At the time of his bankruptcy filing, the Debtor was

faced with contempt proceedings in state court for failure to pay child support. *Id*.

The Chapter 11 case was marked by constant conflict between the parties as Ms. Galgano

continued her efforts to enforce payment of child support obligations in state court.  First, on

September 24, 2006, Ms. Galgano filed a "Motion to Lift Stay for Purposes of (I) Seeking

Determination from State Supreme Court of Non-dischargeability and Amount of Debtor's

Support Obligations; (II) Enforcing Such Non-dischargeable Support Obligations by Levying

Upon, Attaching, and/or Garnishing Debtor's Property; (III) Holding Debtor in Contempt for

---

[4]        The Debtor was represented by attorney Lewis D. Wrobel in the Chapter 11 case.  Although Mr. Wrobel
remains the attorney of record, the Debtor has appeared *pro se* on numerous occasions after conversion to Chapter 7,
with permission of the Court.

Failing to Pay His Child Support Obligations; and (IV) Granting Essential Discovery Related to

State Court Matrimonial Proceeding" (ECF Docket No. 12) and related Motion to Shorten Time

(ECF Docket No. 13), which Debtor opposed (ECF Docket Nos. 16, 17, 18 and 21).  Next, the

Debtor filed a "Motion to Allow Debtor to pay Pre-Petition Child Support" (ECF Docket No.

24), which was opposed by Ms. Galgano (ECF Docket No. 30).[5]  The Court referred the parties

to mediation by order dated October 26, 2004. (ECF Docket No. 36)  Shortly thereafter, counsel

for Ms. Galgano submitted an order lifting the stay to permit the state court to determine "issues

related to custody of the children of Ms. Galgano and the Debtor."  Debtor's counsel consented

to the order (ECF Docket Nos. 49 and 50), which was entered by the Court on November 23,

2004 (ECF Docket No. 51).  While these matters were still in mediation, the Debtor sought a

temporary restraining order from this Court, which was issued on February 1, 2005. (ECF

Docket Nos. 64 and 65, respectively)  The Debtor sought the temporary restraining order because

Ms. Galgano filed an order to show cause in state court, seeking to reopen the custody

proceedings for what the Debtor characterized as the pursuit of "financial litigation in violation

of the automatic stay"; Ms. Galgano explained that she filed the order to show cause in state

court because "she … discovered evidence that Mr. Galgano gave materially false testimony and

filed materially false affidavits in the custody proceeding," and that the motion was not

economically motivated but "clearly in the best interests of the children for the Supreme Court to

determine custody on the basis of a complete, accurate, and truthful record." *Compare*

Affirmation of Lewis D. Wrobel, ECF Docket No. 64, ¶31; *and* Affirmation of Elliot Wiener,

ECF Docket No. 67, ¶6-7.  The Debtor argued that Ms. Galgano's actions were improper based

---

[5]      The basis for the opposition was that, if the Debtor did not pay the amounts he sought to pay in his motion, Barbara Galgano wanted the right to enforce the Debtor's obligation "in the New York State Supreme Court by collecting, levying upon, attaching, garnishing, seizing, or utilizing any method allowed by law to satisfy Debtor's $3,000 child support obligation with non-estate or estate property."

on an understanding between the Court and the parties in a chambers conference that only

matters "fully submitted" to the state court would proceed.  That understanding was not reflected

in the November 23, 2004 order lifting the stay.  The controversy was ultimately resolved, two

months later, when both parties withdrew their respective orders to show cause. *See* April 18,

2005 letter of Lewis D. Wrobel, ECF Docket No. 78.  The same day, Ms. Galgano sought an

order from this Court to show cause why the automatic stay should not be lifted to allow her to

seek enforcement in state court of the Debtor's obligation to provide health care insurance for the

two minor children. (ECF Docket No. 79)  By order dated April 20, 2005, the Court granted Ms.

Galgano's motion for relief from stay and indicated that Ms. Galgano would be awarded

attorneys' fees for the cost of the motion upon submission of invoices to the Court, the Debtor,

and the United States Trustee. (ECF Docket No. 83)  The Debtor's failure to maintain insurance

lead the United States Trustee to move to convert the case to Chapter 7, and the Debtor

consented to the relief. (ECF Docket Nos. 86 and 95 respectively)

After conversion to Chapter 7, Ms. Galgano filed an adversary proceeding objecting to

the dischargeability of certain debts pursuant to 11 U.S.C. § 523(a)(5) and (15) and objecting to

the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4) and (5).  The adversary

proceeding was withdrawn with prejudice on June 1, 2006 in conjunction with a stipulation of

settlement between Ms. Galgano and the Chapter 7 Trustee that was so-ordered on May 30, 2006

(ECF Docket No. 133).  Under the stipulation of settlement, Ms. Galgano withdrew her claims

against the bankruptcy estate in exchange for mutual releases.  Paragraph 7 of the stipulation

provided:

> Specific matrimonial issues regarding grounds for divorce and regarding post-
> petition (post-petition shall mean all obligations subsequent to July 23, 2004)
> alimony, maintenance, child support obligations, child support "add-ons", custody
> and visitation between Barbara Galgano and Louis Galgano shall not be dealt with

in the General Releases referred to above and such obligations, if any, shall be deemed post-petition obligations in this case and shall be determined by the State Court.

The Debtor received a discharge on June 6, 2006.  On June 7, 2006, the Debtor filed the Stay-Violation Motion.

### The Stay-Violation Motion

In the Stay-Violation Motion, the Debtor sought damages of "at least $18,000" resulting from an alleged violation of the automatic stay.[6]  The Stay-Violation Motion was founded on the fact that Ms. Galgano commenced a contempt application in the state court in May 2006 due to the Debtor's failure to pay a $3,000 sanction.  The sanction was assessed in a January 19, 2006 decision and order of Justice Richard B. Liebowitz for comments the Debtor made in an affidavit filed in state court on June 15, 2005. (ECF Docket No. 138, Exh. 1)[7]

---

[6]    11 U.S.C. § 362(h) provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

[7]    The Debtor's June 15, 2006 affidavit referred to an April 2005 ruling by another Justice as "an outrage," "appalling," "berserk in its language and purported rationale," accused that Justice of suffering from "ineptitude," "an inability to be fair," "display[ing] ignorance in the application of proper factual and legal standards," "obvious misapprehension and blindness … in matters of fact and law," and "tunnel vision". (ECF Docket No. 138, Exh. 1, p. 16)  Justice Liebowitz assessed the sanction "as an offset for [Barbara Galgano's] incurrence of legal fees," with payment to be made within 60 days of the date of the order.  Justice Liebowitz found that the Debtor had engaged in "frivolous conduct" pursuant to Title 22 of the New York Official Compilation of Codes, Rules and Regulations ("NYCRR") § 130-1.1(c), which states:

(c) For purposes of this Part, conduct is frivolous if:

(1)  it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;

(2)  it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or

(3)  it asserts material factual statements that are false.

Frivolous conduct shall include the making of a frivolous motion for costs or sanctions under this section. In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.

The Court has been informed that Justice Liebowitz's decision and order was appealed by both parties.

Pursuant to the "automatic stay" provision in 11 U.S.C. § 362(a), the filing of a

bankruptcy petition operates as a stay against various acts of creditors, but only as to *pre-petition*

debts. *See, e.g.,* 11 U.S.C. § 362(a)(1) (barring commencement or continuation of a judicial,

administrative, or other action or proceeding against the debtor that was or could have been

commenced "before the commencement" of the bankruptcy case or to recover a claim against the

debtor that arose "before the commencement" of the bankruptcy case), (2) (barring the

enforcement of a judgment obtained "before the commencement" of the bankruptcy case), (5)

(barring any act to create, perfect or enforce against property of the debtor a lien to the extent it

secures a claim that arose "before the commencement" of the bankruptcy case), and (6) (barring

any act to collect, assess or recover a claim against the debtor that arose "before the

commencement" of the bankruptcy case).  Thus, the filing of a Chapter 7 petition does not

operate as a stay as to any debt that arises post-petition.  Moreover, the automatic stay is subject

to certain exceptions set forth in Section 362(b), which states in relevant part:

> (b) The filing of a petition … does not operate as a stay –
>
> ***
>
> (2) under subsection (a) of this section –
>
>> (A) of the commencement or continuation of an action or proceeding for –
>>
>>> (i) the establishment of paternity; or
>>>
>>> (ii) the establishment or modification of an order for alimony, maintenance, or support; or
>>
>> (B) of the collection of alimony, maintenance, or support from property that is not property of the estate.

The above provisions, together with paragraph 7 of the May 30, 2006 stipulation of settlement,

makes it patently clear that the actions complained of in the Stay-Violation Motion were post-

petition and not subject to the automatic stay.  Thus, after hearing Mr. Galgano on June 27, 2006,

the Court denied the Stay-Violation Motion and ruled as follows:

THE COURT: I heard you, Mr. Galgano. You're reaching back years in the past to try and confuse the fact that … this January you were sanctioned for submitting a frivolous motion for reargument before a Judge in the state court. And it's easy to see how defending that motion [alone] would end up $3,000 in attorneys' fees. And the Judge was pretty clear on this. The debtor was sanctioned for frivolous conduct ….

        ***

The offset [Justice Liebowitz] talks about is for the cost of the motion, at least that's my reading on his ruling. And that's what I'm going to say. The debtor's motion is not warranted by this law and is itself sanctionable under Bankruptcy rule 9011(b)(2).

It is clear from the exhibits to the debtor's own motion as well as from the opposition of Barbara Galgano that the conduct complained about by the debtor occurred post-petition and post Chapter 7 conversion. The debtor was sanctioned $3,000 in state court by the decision and order of Richard B. Liebowitz, Justice in State Supreme, dated January 19, 2006, for comments the debtor made in an affidavit he filed in state court on June 15, 2005, two months after the [bankruptcy] case was converted to Chapter 7. The conduct the debtor complains of is an order to show cause filed in state court by Barbara Galgano on May 2006 to hold the debtor in contempt for failure to obey a January 19, 2006 order by paying the sanctions of $3,000 within 60 days provided by the court.

This [bankruptcy] case was filed on July 23, 2004, thus the conduct complained of was not an attempt to collect a pre-petition debt. The automatic stay in Section 362 simply does not apply because sanctions assessed by conduct occurred long after the bankruptcy case was filed and was not an attempt to collect a pre-petition debt.

June 27, 2006 Tr., p. 13-16. At this point, the Court acknowledged that Fed. R. Bankr. P. 9011(c)(1)(B) permits bankruptcy judges to initiate proceedings to consider sanctions, but declined to do so.[8] The Court's view, then and now, is that the Stay-Violation Motion was one of a series of motions brought in bankruptcy court by two extremely aggressive parties mired in state court litigation who seek to use the bankruptcy court to gain leverage, monetary and otherwise, in state court. Because the bankruptcy issues between the parties have been resolved, the Court is reluctant to award either party's request for sanctions that primarily target conduct before the state court. Sanctions imposed under Rule 9011(c)(2) have deterrence as their

---

[8]      At the June 27, 2006 hearing, the Court verbally indicated the Stay-Violation Motion would be "dismissed," but the July 5, 2006 order denies the motion.

paramount goal. This Court's opinion on June 27, 2006, which has since been confirmed, was

that an award of sanctions under these circumstances would encourage "repetition of such

conduct or comparable conduct by others similarly situated" rather than deter such conduct. The

Court's ruling on June 27, 2006 was intended to convey these sentiments, but, to the Court's

dismay, Ms. Galgano interpreted the ruling as an invitation for more sanctions litigation.

### **The Rule 9011 Motion**

The Rule 9011 Motion sought sanctions against the Debtor for bringing the Stay-

Violation Motion "despite the existence of four ironclad dispositive defenses which required

denial of his motion," and because the debtor "asserted frivolous grounds, lacking any relevant

authority, in support of his motion." Rule 9011 Motion, ¶6-7. Ms. Galgano also stated:

> At the hearing held on the Debtor's Motion on June 27, 2006, this Court (i)
> denied the [Stay-Violation Motion]; (ii) found the arguments the Debtor asserted
> in [the Stay-Violation Motion] could subject him to sanctions personally under
> Bankruptcy Rule 9011. The Court did not impose sanctions at that time because a
> sanctions motion was not then before the Court. However, *the Court invited
> counsel for Mrs. Galgano to bring such motion for its consideration.*

*Id.* at ¶2 (emphasis added).

The first question the Court asked at the October 24, 2006 hearing on the Rule 9011

Motion was whether Ms. Galgano had complied with the safe-harbor provision. Counsel for Ms.

Galgano answered:

> Your Honor, we served our motion. We did not exercise that particular avenue,
> because we thought we had permission from this Court to file the motion, as it
> had been brought up in our last hearing. And there is a provision in Rule 9011 – I
> don't have the rule before me, I'll get it right now – but that allows the Court to
> assess sanctions sort of *sua sponte*. And we were bringing our motion in
> conjunction with the Court's endorsement, or what we perceived as approval in
> bringing such a motion.
>
> Obviously, because the conduct by Mr. Galgano had already occurred, we
> couldn't ask him for a formal withdrawal of his motion for sanctions….

October 24, 2006 Tr. at 4. The Court interrupted:

- 12 -

THE COURT: Well, don't you think the Court's own right to sanctions *sua sponte* is restricted by 9011?

MR. HARUTUNIAN: I think Rule 9011 provides the Court with authority to sanction.

THE COURT: I would think the Court would also have to follow the procedures which have not been addressed.

October 24, 2006 Tr. at 4-5.

In fact, bankruptcy courts are also constrained to follow the procedural steps in Rule 9011(c) before assessing sanctions. Where a pleading or submission from a party violates one or more of the provisions of Bankruptcy Rule 9011(b),[9] Bankruptcy Rule 9011(c) permits the Court, "after notice and a reasonable opportunity to respond," to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Under Rule 9011(c), in order for a court to exercise its authority the court must enter an order "describing the specific conduct that appears to violate [Rule 9011(b)] and directing an attorney, law firm, or party to show cause why it has not violated [Rule 9011(b)] with respect thereto."

At the October 24, 2006 hearing, counsel for Ms. Galgano argued:

MR. HARUTUNIAN: Your Honor, we were faced with a situation that did not allow us to follow the procedures of Rule 9011 because –

---

[9]    Rule 9011(b) provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

THE COURT: In what way?

MR. HARUTUNIAN: Because of the circumstance that we were in.
Mainly that Mr. Galgano had brought his motion for sanctions against us.  By
virtue of his bringing his motion, we were compelled to oppose it.  And once we
opposed it, we had run up fees on our account.  And we couldn't ask him to
withdraw his motion until it was denied by Your Honor.

THE COURT: You couldn't say to him that you are the target of a
sanctions motion[], you have 21 days to withdraw or correct?  I mean that's a
simple thing once the motion was filed.

October 24, 2006 Tr., p. 6.  The Court was not satisfied by this explanation, that compliance with

the safe-harbor provision was somehow excused because Ms. Galgano was "compelled" to

oppose the Stay-Violation Motion rather than demand, pursuant to Rule 9011(c)(1)(A), that it be

withdrawn or corrected.  Even after considering the additional arguments in the Supplemental

Motion, the Court finds no reason to believe that Ms. Galgano's situation in this case was

different from any other party that is served with a frivolous motion.

### The Supplemental Motion

In the Supplemental Motion, Ms. Galgano argues that "unique factual circumstances" are

involved in this case "including her reasonable belief that she had received the Court's

authorization to file the motion," and that the safe-harbor requirement should be excused.

Supplemental Motion, ¶2.  Ms. Galgano explains:

Mrs. Galgano understood the Court has having "admitted" or permitted her to file
a sanctions motion under Rule 9011(c)(1)(A) to fulfill the paragraph (B) notice
requirement in lieu of the Court notifying the Debtor and "describing the specific
conduct" at issue.  Put another way, by substituting a motion under paragraph (A)
for a Court initiated description under paragraph (B), the Court delegated to Mrs.
Galgano the duty to provide the Debtor with [Rule 9011(c)(1)(B)] notice.

Supplemental Motion, ¶19 (emphasis added).  Ms. Galgano does not refer the Court to any case

where a court delegated its power to sanction under Rule 9011(c)(1)(B) to another party.  The

only case Ms. Galgano cites where a court excused strict compliance with the safe-harbor rule is

*Little v. Twentieth Century-Fox Film Corp.,* 1996 U.S. Dist. LEXIS 9301 (S.D.N.Y. July 3,

- 14 -

1996), *rev'd sub nom. DeStefano v. Twentieth Century Fox Film Corp.*, 1997 U.S. App. Lexis

6247 (2d Cir. April 3, 1997). Ms. Galgano reasons that although the movants in *Little* (the

defendants), sent the plaintiffs a letter stating that they might seek Rule 11 sanctions if the

complaint was not withdrawn, they did not comply with Rule 11 by actually serving a copy of a

Rule 11 motion. However, the District Court in *Little* held that "defendants' December 1994

letter, in which they requested that plaintiffs withdraw the action in exchange for a waiver of

defendants' claim to attorney's fees, specifically put plaintiffs' counsel on notice that Rule 11

sanctions would be pursued." 1996 U.S. Dist. Lexis 9301, at *24 (emphasis added). Ms.

Galgano did not provide the Debtor with any notice that she would seek sanctions pursuant to

Rule 9011 and therefore did not provide the Debtor any opportunity to withdraw the Stay-

Violation Motion.

This Court adheres to the safe-harbor requirement for the reason expressed in *In re

Stevens*, 2001 WL 34093946, at *4 (Bkrtcy. D. Vt., Jan. 17, 2001): "Th[e] so-called 'safe harbor'

provision is a mandatory procedural prerequisite for seeking sanctions under the rule and

sanctions imposed without compliance with this provision are subject to reversal." In *Stevens*,

Judge Colleen A. Brown refused to hear a sanctions motion that was not served in compliance

with the safe-harbor rule "regardless of the merits of the sanction request" because "[i]n light of

the need for compliance with the procedural safeguards of the safe harbor provision before the

imposition of sanctions in this circuit, *see Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320 (2nd

Cir.1995), I will require strict compliance with Rule 9011 in the interests of due process and

fundamental fairness as a prerequisite to the awarding of sanctions in this court." *Id.* at *4.[10]

---

[10]    Barbara Galgano claims that *Stevens* "is no barrier to relief in this case" because "[t]here, the Court did not
dismiss the proceeding that triggered the motion." Supplemental Motion, ¶30. In fact, the motion that triggered a
request for sanctions was denied, as was the Stay-Violation Motion in this case. Barbara Galgano's argument,
apparently, is that in *Stevens*, there were more opportunities to seek sanctions. If this is her argument, it ignores the

*Stevens* cites the Second Circuit's decision in *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) which reversed an award of sanctions "particularly" due to the failure to observe the 21-day safe-harbor period provided by Fed. R. Civ. P. 11.[11]  The Second Circuit has also noted:

> Although Rule 11 contains no explicit time limit for serving the motion, the "safe harbor" provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission.

*In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003).  The Sixth Circuit has stated in dictum:

> If the court disposes of the offending contention before the twenty-one day "safe harbor" period expires, a motion for sanctions cannot be filed with or presented to the court.  Any other interpretation would defeat the rule's explicit requirements. Once a motion is properly filed with the court, the drafters [of the 1993 amendments to Fed. R. Civ. P. 11, which added the safe-harbor provision] prudently permit the court to defer ruling on the sanctions motion until after the final resolution of the case.

*Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997) (citing 1993 Advisory Committee Notes).

*Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995) rejected an argument Ms. Galgano makes here, that the party seeking sanctions was not bound by the safe-harbor provision because the court granted leave to move for sanctions "if they desire to do so".  District Judge Arthur D. Spatt responded: "The granting of such leave in no way was

---

purpose of Rule 9011 in general (deterrence) and the safe-harbor provision in particular (an opportunity to correct or withdraw the challenged submission).  In *Stevens*, the plaintiffs were the target of a request for sanctions for filing an allegedly frivolous motion to amend complaint.  Judge Brown denied plaintiffs' motion and also denied the defendants' first request for sanctions without prejudice because it was not filed as a separate request as required by Rule 9011. *Id.* at *2.  The plaintiffs ultimately filed a restated motion that cured the defects identified by the defendants in the sanctions motion, and this "mitigate[d] against the imposition of sanctions". 2001 WL 34093946 at *5.  Judge Brown observed: "Thus, the defendants' notice to plaintiff's counsel was efficacious.  In fact, the purpose of the safe harbor provisions, namely to obviate the need for sanction proceedings, might have been accomplished prior to the hearing if the defendants' [sic] had properly served its [sic] 9011 motion." *Id.* at *4.

[11]      Fed. Rule Civ. P. 11 and Fed. R. Bankr. P. 9011 are nearly identical, and courts often apply cases decided under Rule 11 to Rule 9011. *See In re Gioioso*, 979 F.2d 956, 960 (3d Cir. 1992).

intended, nor could it, circumvent the amended provisions of Rule 11.  In fact, this Court could

not prevent the defendant's counsel from *making* such a motion." *Id.* at 452 (emphasis in

original).  The moving party also contended that the target of the sanctions motion "had many

more than 21 days to withdraw or correct the challenged material." *Id.*  This argument was

rejected as "totally misplaced since the rule providing for the 21 day 'safe harbor' period

expressly states that the 'safe harbor' period is '21 days after service of the motion'." *Id.*  Judge

Spatt also observed that the safe-harbor provision serves an extremely important function

because it "has the salutary effect of providing appropriate due process considerations to

sanction litigation, reducing Rule 11 volume and eliminating abuses proscribed by this Rule." *Id.*

This Court denies the Rule 9011 Motion for the same reason that sanctions in *Photocircuits* was

denied – the moving party failed to comply with the safe-harbor provision.

Ms. Galgano attempts to distinguish *Photocircuits* because the motion targeted by Rule

11 in that case was voluntarily withdrawn, but in this case the Stay-Violation Motion was denied

before the Rule 9011 Motion was filed.  The case at bar resembles *In re M.A.S. Realty Corp.*, 326

B.R. 31, 39 (Bankr. D. Mass. 2005), in which the bankruptcy court refused to award sanctions

where the Rule 9011 motion was not served until after the court denied the motion that was the

subject of the sanctions, because the timing "essentially rendered the safe harbor a nullity".  Like

Ms. Galgano, the movant in *In re M.A.S. Realty Corp.* did not urge the bankruptcy court to take

action *sua sponte*, an action that court declined to take, until it recognized that the Rule 9011

motion was procedurally defective. *Id.* at 40, n. 13.  The movant in that case argued that

compliance with the safe-harbor provision should be excused because the full extent of the

adverse party's frivolous motion was not evident until shortly before the hearing on the motion,

and this left no time for service of the motion pursuant to Rule 9011(c)(1)(A).  The bankruptcy

court rejected the argument and listed the options available in those circumstances:

> It could have filed a motion asking that the Court issue an order to show cause under Rule 9011(c)(1)(B) and set forth with specificity why it was necessary for the Court to act. It could have requested that the hearing be continued.  It could have asked the Court to refrain from entering a judgment on the … issue for 21 days in order to give the parties against whom sanctions were being sought the opportunity to amend or withdraw the claim.

*Id.* (footnote omitted).  Like Ms. Galgano, the movant in *M.A.S. Realty Corp.* "failed to avail

itself of any of these options, instead waiting until it was too late for the parties against whom

sanctions were being sought to take corrective action." *Id.*  As a consequence, the failure to

comply "deprived the opposing parties the benefit of the safe harbor, which precludes this Court

from imposing sanctions". *Id.*  The ruling in *M.A.S. Realty Corp.* is consistent with the Advisory

Committee Notes on the 1993 amendments to Rule 11 that, "[g]iven the "safe harbor" provisions

… a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial

rejection of the offending contention)."

The Supplemental Motion also urges the Court to sanction the Debtor under two

alternatives to Rule 9011, discussed below.

### 28 U.S.C. § 1927

Title 28, section 1927 of the United States Code has no safe-harbor provision and

permits a court to review the entirety of the proceedings in the case.  Specifically, Section

1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"The purpose of this rule is to protect the judicial process from abuse, to punish those who have

abused it, and to provide relief for the party who has had to contend with the sanctioned party's

multiple litigation." *In re LJAK Associates, Inc.*, 165 B.R. 9, 12 (Bankr. E.D.N.Y. 1994).

Sanctions under Section 1927 may be imposed "only when there is a finding of conduct

constituting or akin to bad faith." *Sakon v. Andreo,* 119 F.3d 109, 114 (2d Cir.1997). An award

under Section 1927 is proper when the attorney's actions are "so completely without merit as to

require the conclusion that they must have been undertaken for some improper purpose such as

delay." *U.S. v. Intl. Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991) (internal quotation

marks omitted).

> Ms. Galgano offers the following reasoning in support of sanctions under Section 1927:
>
> Had the Debtor not filed his frivolous … Motion in the first instance, Mrs.
> Galgano would not have had to file three separate legal briefs, one affirmation,
> her billing and time records, and numerous other exhibits.  The Court also would
> not have had to conduct hearings on three separate dates.  Since the Debtor is
> responsible for the vexatious multiplication of the pleadings and proceedings in
> this bankruptcy case, sanctions should be awarded against him.

Supplemental Motion, ¶44.  Ms. Galgano's argument here is not that the Debtor personally

multiplied the proceedings "unreasonably and vexatiously"; rather, she appears to reason that *the*

*Debtor caused Ms. Galgano to multiply the proceedings*, and that the Debtor is, in her own

words "responsible for the vexatious multiplication of the pleadings and proceedings in this

bankruptcy case."  Another way to put Ms. Galgano's argument is that she has unreasonably and

vexatiously multiplied the proceedings in this case, but the Debtor made her do it, and should be

punished for it by paying the fees Ms. Galgano incurred in multiplying the proceedings.

There is no doubt that the Court has the inherent power to sanction activity *before this*

*Court*, and for the purposes of this decision, the Court assumes that bankruptcy courts may act

under Section 1927 as part of that inherent power, and that the Debtor is an "attorney" subject to

Section 1927.[12]  Of course, the Court has no authority to exercise either its inherent power or the

---

[12]     Although some circuit courts have held that bankruptcy courts lack jurisdiction to impose sanctions under
28 U.S.C. § 1927 (*see, e.g., In re Courtesy Inns, Ltd.,* 40 F.3d 1084, 1086 (10th Cir.1994)), the Second Circuit ruled

power under Section 1927 to sanction a party for conduct that occurred before another court.

Ms. Galgano attempts to use an act by the Debtor in this court to invoke a federal statute in order

to reach state court conduct that is totally unrelated to the bankruptcy case. *See* Supplemental

Motion, ¶47-50.  This is impermissible.  "The language of § 1927 limits the court's sanction

power to attorney's actions which multiply the proceedings in the case before the court. Section

1927 does not reach conduct that cannot be construed as part of the proceedings before the court

issuing § 1927 sanctions." *In re Case,* 937 F.2d 1014, 1023 (5th Cir. 1991).  In *Case*, the Fifth

Circuit ruled that where the state court proceeding was "an entirely separate action," a federal

court could not use Section 1927 to sanction a party and his attorney for conduct in the state

court "no matter how vexatious or multiplicious that conduct may be." *Id.; see also Grid Sys.*

*Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994) ("Section 1927 cannot reach

conduct of a party who is not involved in an action before the sanctioning court at the time of the

conduct."); *Butcher v. Lawyers Title Ins. Corp.*, 2005 WL 2242881, at *1 (W.D. Mich. Sept. 12,

2005) (court may not rely upon § 1927 as a basis for sanctions when the conduct at issue did not

occur before that court); *Bowden v. Tompkins Rubber Co.*, 1992 WL 108973, at *1 (E.D. Pa.

May 13, 1992) ("F.R.Civ.P. 11, and 28 U.S.C. § 1927, apply only to cases in federal court, and

not to proceedings occurring in state court before removal to federal court"); *In re Carl F.*

*Semrau D.D.S., Ltd.*, 2006 WL 3690183, at *6 (Bkrtcy.N.D.Ill. Dec. 14, 2006) (inappropriate to

consider and impose sanctions for conduct in state court cases or individual bankruptcy case as

part of corporate bankruptcy proceeding).  *Galonsky v. Williams*, 1997 U.S. Dist. LEXIS 19570

(S.D.N.Y. 1997), cited by Ms. Galgano, is consistent with the foregoing cases.  Although Judge

John S. Martin, Jr. began by noting that the sanctions he imposed against a plaintiff's attorney

---

that a bankruptcy court may impose sanctions under Section 1927 without discussing the jurisdictional issue. *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991).

"arise from a course of conduct which began with the filing of a state court action in New

Jersey," *Id.* at *2, he later makes clear that sanctions were assessed for "conduct before this

Court," which was "a study in vexatious and multiplicative litigation." *Id.* at *11. Judge Martin

concluded:

> The Court recognizes that it can not sanction [the attorney] for conduct that
> occurred in other courts. The background of litigation in other courts as set forth
> above is relevant, however, to the question of [the attorney's] good faith, or lack
> of good faith, in connection with the filing of the pleadings and motions in this
> court.

*Id.* at *19.

Over the course of these bankruptcy proceedings, the Debtor's conduct has been, at

times, contentious and aggressive. The same is true for Ms. Galgano. Thus, it would be difficult

for the Court to sanction one and not the other. In any event, the Court does not believe that the

Debtor has multiplied the bankruptcy proceedings excessively or has acted so "unreasonably and

vexatiously" that, under the totality of circumstances in this case, his conduct should result in an

award of costs, expenses or attorneys' fees to Ms. Galgano. The Court is aware that the parties

are locked in a bitter, long-standing legal dispute, and only a small portion of that litigation has

proceeded under the jurisdiction of the bankruptcy court. Under these circumstances, the Court

declines to shift the costs of litigation.

### Court's Inherent Power

For the reasons cited above, the Court declines to exercise the inherent power to sanction.

"The only meaningful distinction between a sanction award pursuant to Section 1927 and one

pursuant to a court's inherent powers is that awards under § 1927 are made only against

attorneys or other persons authorized to practice before the courts while an award made under

the court's inherent powers may be made against an attorney, a party, or both." *Jackson v. Levy*,

2000 WL 124822, at *6 (S.D.N.Y. Feb. 2, 2000) (citation and internal quotations omitted). A

court's inherent power to sanction "derives from the fact that courts are vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 336 (2d Cir. 1999) (citations and internal quotation marks omitted).  In order to impose sanctions pursuant to its inherent power, a court must find that: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Id.* at 336.  "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'" *U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d at 1345 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 111 S.Ct. 2123, 2132 (1991)).  The exercise of restraint and discretion warrants denial of sanctions in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court will issue a separate order denying the Rule 9011 Motion and Supplemental Motion.

Dated: Poughkeepsie, New York
         January 5, 2007                    /s/ Cecelia Morris
                                            CECELIA G. MORRIS
                                            UNITED STATES BANKRUPTCY JUDGE